15 0674 people the state of Illinois at the league versus Lavelle Dunbar of challenge by Andrew Boyd. Please proceed. Good morning, your eyes. Andy Boyd from the State Appellate Defender's Office on behalf of Defendant Lavelle Dunbar. If it please the court and counsel, the most important issue this case presents is very simple and it's very straightforward. The question is, does the state have to present any evidence that the defendant did something unlawful in order to convict him of a criminal offense? And the answer obviously is yes, but the state did not do so here. We presented some points of law about what the state specifically has to prove in order to convict somebody under a theory of accountability. And I don't mean to diminish the importance of those arguments, but the bottom line here is that the state has simply failed to show that Mr. Dunbar did anything unlawful on the evening in question. And for that reason, we're asking this honorable court to reverse his conviction outright. We've also presented three issues asking this court to reverse Mr. Dunbar's conviction and remand the case for a new trial for various reasons. There's no need in our view for the court to even reach these arguments. However, I am prepared to talk about these arguments today if time allows, and I'm more than happy to answer any questions that the court might have about these issues. Our first argument is that the state failed to prove Mr. Dunbar guilty beyond a reasonable doubt. That's the legal phrase that we normally use when we're trying to argue that the state did not present enough evidence to prove that one of our clients was guilty. And that's the way I phrase it in my brief, beyond a reasonable doubt. The implication in that term is that, well, the state may have presented some evidence that Mr. Dunbar was guilty, but it wasn't enough. And I want to be clear that the argument I'm making here is much stronger than that. It isn't that the state presented some evidence that Mr. Dunbar murdered the symptom J.S., and that evidence wasn't enough to convict. The point here is that the state presented no evidence whatsoever that Mr. Dunbar did anything unlawful. And I direct this court's attention to page 27 of the state's brief, where the state distills its case against Mr. Dunbar to its essence. The state presents two arguments. The first argument is that Mr. Dunbar was present when J.M. was murdered. And the second argument is that Mr. Dunbar and his girlfriend, Layla Martin, did not properly care for J.M.'s diaper rash. And that's it. And on that evidence, Mr. Dunbar was there. He and his girlfriend did a lousy job of caring for their baby's diaper rash. On that evidence, Mr. Dunbar is convicted of the most heinous crime on the books in the state of Illinois. Your judgment is simply, fundamentally, and seriously wrong, and there is no other way to put it. We do not convict people in the United States of any criminal offenses, much less first-degree murder, on this sort of flimsy evidence. And I'd even go so far as to say that the term evidence is wrong is the wrong word to use here, because evidence implies that there was some sort of evidence of wrongdoing. The better term here, perhaps, is information. We've got information that Mr. Dunbar and Ms. Martin failed to care for J.M.'s diaper rash. That simply cannot result in a conviction for first-degree murder in the United States of America. And I'd like to talk about some of the more technical aspects of my argument. The state chose to charge Mr. Dunbar under a theory of accountability. And it's not clear to me why the state did that, but that's a choice that the state made, and the state has to live with it. The first thing I'd like to do is clear up a bit of a misconception in the state's brief. The state argues that when a defendant is charged under a theory of accountability, it's free to proceed as if the defendant were either the principal or accountable for the offense. With all due respect for the state, the state's mistaken. When a defendant is merely accountable for a crime, the state can, in fact, charge the defendant as a principal. So the state could have charged Mr. Dunbar as a principal here in this case, but the state has to charge him under a theory of accountability. And that leads me to my first point of law regarding the law of accountability. When the state elects to charge somebody under a theory of accountability, as it did so here, in order to establish the guilt of the defendant, the state is first bound to establish a case against the principal. And I've cited numerous examples of case law in my brief for that proposition. So the state was obligated in the first instance to make out a case against the principal. Since everybody agrees here that there was only two people, two adults present in the apartment when J.M. was murdered, and the state alleged that Mr. Dunbar was accountable for the murder, that leaves Martin as the principal. Couldn't be anybody else. The state didn't call Ms. Martin to testify, and the state presented no evidence whatsoever that she actually battered J.M. So as a straightforward matter of law, Mr. Dunbar, under a theory of accountability, cannot be guilty of murder under a theory of accountability. The second legal issue that we presented on a theory of accountability is that in order to prove Mr. Dunbar guilty, the state has to prove that either Mr. Dunbar shared the criminal intent of the principal, Ms. Martin, or that there was some sort of common criminal design between the two of them. And the state has completely and utterly failed to show that Mr. Dunbar shared any criminal intent or any criminal design with Ms. Martin. And I'd note the presence at the scene by statute, in and of itself, is not evidence that Mr. Dunbar shared any common criminal intent or design with Ms. Martin. And the failure to properly care for the infant's diaper rest certainly is not any evidence of common criminal intent or design. So there's two reasons that Mr. Dunbar's conviction cannot stand as matters of straightforward law. The first is that the state failed to establish a case against the principal, and the state is that the state, the second is that the state failed to prove that Mr. Dunbar shared any sort of common criminal intent or design. I'd like to very briefly talk about the trial court's denial of the defense's motion for a directive verdict at trial. The trial court unfortunately misunderstood the law of accountability. When the trial court denied the defense's motion for a directive verdict, the court said, all the state has to prove is that on the date and time the murder was committed, they've done that, then they have to prove beyond a reasonable doubt that one of those two people did it, the mother or the father, and the jury gets to pick. That's all they have to prove, end quote. The statement, unfortunately, by the trial court was erroneous on several different levels. First, the state did not simply have to prove that either Martin or Mr. Dunbar committed this offense. The state was first required to make out a case against Martin, the principal, and the state didn't do that. The second thing is that the state hadn't proved beyond a reasonable doubt that Mr. Dunbar shared a common criminal intent or design with Miss Martin, and the state had not done that. The law of accountability certainly does not provide, as the trial court seemed to opine, that when two people are present at the scene of a crime and one of them must have committed the offense, the jury simply gets to pick one of those people and declare that person guilty. That is not what the law of accountability states, Your Honors. In fact, the law of accountability expressly provides the opposite. Mere presence at the scene of a crime is not in and of itself sufficient to establish guilt, and that is by statute, Your We shouldn't even be here discussing this case. The circuit court should have granted the defense's motion for a directed verdict and the matter should have ended at that point. I'd like to talk briefly about Miss Martin's statements to the paramedics and the hospital personnel that Mr. Dunbar was the last person to care for JM before Miss Martin was unresponsive. And the first thing to point out is that we've argued in our brief that these statements were in the municipal hearsay. But more importantly, I think, much more importantly, is that on the record that we have, it was Miss Martin that was with JM when JM turned up battered, not Mr. Dunbar. The record that we have in this case, all the indications in the record are that when Mr. Dunbar was feeding this infant or Mr. Dunbar put this infant to bed, the infant was just fine. Miss Martin said that the infant was smiling and happy. During the police interview, Mr. Dunbar said that the baby was healthy and just fine when he put him to bed. So the evidence that we have from the record shows that this infant was just fine when Mr. Dunbar put him to bed. Miss Martin shows up 15 minutes or a half hour later and the infant's battered. There is simply no evidence to reiterate that Mr. Dunbar committed any criminal offense on this night. And I need to talk a little bit about the prosecution's amazing series of speculation piled on top of speculation in its closing argument. And I completely understand that closing arguments are not evidence of guilt, but they certainly had to play a role in the jury's decision to find Mr. Dunbar guilty. And we start with the fact that nobody disputes that JM had an injured or irritated anus. The evidence showed that and we certainly don't five increasingly unreasonable inferential leaps. From the fact that JM had an injured or irritated anus, the state speculated that JM was crying and screaming because he had an irritated or injured anus. From that speculation, the state went on to speculate that JM was crying and screaming in such a manner that would upset a young parent like Mr. Dunbar. From that speculation, the state went on to speculate that Mr. Dunbar actually became upset at JM's crying. From that speculation, the state went on to speculate further that Mr. Dunbar battered and killed JM because he was upset with JM for crying. With all due respect to the state, this was nothing more than rank speculation. We do not convict people of murder in the United States of America based on rank speculation. And for that reason, Your Honors, we respectfully ask that this Court reverse Mr. Dunbar's conviction outright. And we also respectfully ask that the Court find that the state presented insufficient evidence that Mr. Dunbar committed aggravated battery of a child. I can see that I have a little bit of time left. I'd like to talk briefly about a couple of the new trials that you said we presented. The first is Rule 431B error. To make a long story short, and this is outlined in my brief, the Rule 431B admonishments in this case were, again with respect to the trial court, a jumbled mess. They were sloppy and they were incomplete. And there can't be any question that at a minimum, at a minimum in this case, the evidence was closely balanced. And we now have the Sevey case, which tells us that a clear 431B violation is cognizable and reversible error under the first problem of plain error doctrine. So we've got a clear 431B error. We know from the Belknap case that Rule 431B is to be strictly construed. We know from Sevey that a clear 431B error is cognizable and reversible under the first prong of plain error. So we would ask that if this court would decline to reverse Mr. Dunbar's conviction, I'll write that remanded for a new trial. I'd also like to briefly talk about the videotaped interview that Mr. Dunbar had with the police. And this gets us to this court's decision in Hardeman last year. What happened here was we had a portion of the interview in which the detectives were speaking with Mr. Dunbar about the events on the night in question. And at a certain point during that interview, by my count about 934 in the morning, Mr. Dunbar ceased making any meaningful responses to the state's, excuse me, the police's increase. And at that point, from that point forward, what this interview showed was the detectives repeatedly and repeatedly committed this crime. And this entire video was shown to the jury. And trial counsel should have moved to redact that portion of the video because it was highly prejudicial to Mr. Dunbar. There could have been no trial strategy whatsoever in allowing the jury to see this evidence. And given the complete lack of evidence that the state had presented, the detectives' relentless accusations and apparent certainty that Mr. Dunbar committed this crime may have played some role in the jury's decision to convict Mr. Dunbar. And the last thing I'd like to talk about is the improperly admitted here state statements of J.M.'s mother. And to make a long story short here, Your Honors, we do understand that there was a formal declaration of death at the hospital that was made by the doctor. However, all the indications were prior to that, unfortunately, this infant was dead. Paramedic Goosey testified that J.M. was lifeless, breathless, and pulseless at the apartment, did not respond to any attempts to revive him. Dr. Pandy Mangin testified that when J.M. arrived at the hospital, he was pale gray, cold, not breathing, and had no pulse. Ms. Martin's statements didn't have anything to do with any resuscitation efforts, and they were made after this. Unfortunately, the child was dead. So in any evidence that Mr. Dunbar committed any sort of a criminal offense on the evening in question, and we respectfully request that this Honorable Court reverse this conviction outright. If this Court declines to do that, we respectfully request that this Court grant him a new trial. Thank you for your time, Your Honors. Thank you, Counselor. May it please the Court, good morning, Your Honors, Counselor. I'll take the Thomas Rattleman of the people. The first, or the last argument first regarding the hearsay statements, only Dr. Pandya, pardon me, the doctor's statements were made, statements by the mother were made to the doctor after the child was declared dead. Prior to that, all the statements the mother made were made during the course of life-saving efforts. Although the child ultimately was declared dead at 4.47 p.m., prior to that, the first responders and the doctor were trying to make efforts to revive the child. Therefore, and the nurse testified that she was taking history and providing that into the room, the resuscitation room, in order to help the process of the resuscitation. Therefore, all those fall within the terms of the main argument regarding the accountability. There is no question how the charges were drafted. Accountability was seen to be the, how that was set forth. However, as we set forth in our brief, first degree murder is the charge and accountability is not a charge. It is only a theory. And both theories can be advanced, even if the, both are not advanced in the state's case in chief, and that's under Batchelor. We respectfully disagree that there is no evidence that the defendant did not commit the battery of his child. The statements by Ms. Martin placed the defendant, certainly as the last person who had that child before, she found him, the child, unresponsive. That evidence and the fact that there was grotesque injuries to this child, battered skull fractures with floating pieces of skull, bruises, hemorrhaging on the skull, which the pathologist said was unlike anything, even in adult injuries that he'd seen. So even if this court were to find that there was a problem with the first degree murder accountability case, the state argued that the defendant was responsible for the battery within its argument. So therefore, the evidence shows and the reasonable inference is that the defendant being the last person with that child,  horrific injuries, the defendant was the person responsible for those injuries. Therefore, we respectfully disagree with the defendant's argument that there was no evidence of defendants committing this offense. And the citation to the Turner case is simply for the proposition that the person who was last seen with the victim can be inferred that they were responsible. Also, the argument that Ms. Martin must be the person responsible because she was the person, I think the reasonable inference is that Ms. Martin is the one that discovered that the child was unresponsive and reported it to the defendant and then called 911. Therefore, it's reasonable to infer that the defendant is responsible. Regarding the video interview, it's trial strategy. I mean, the defense counsel asked the jury repeatedly to look at the demeanor of the defendant, how could this person possibly be a killer, blah, blah, blah. It's simply matter of trial strategy whether defense counsel or anyone else would have chosen a different strategy. It is beside the point. And finally, regarding 431B, our argument is under Belknap. The court at least said that it was arguable that asking for disagreement with a principle was equivalent to acceptance. And here the trial judge asked if the jury agreed with those principles. And therefore, we believe that there was no error under that theory. So, no questions. I respectfully request this court affirm. Thank you, Your Honor. Just a couple things to point out, Your Honor. As to Ms. Martin's statements, what these statements show, if we take them at face value, if we find them admissible, is that she was the last person who was with J.N. before he turned up, Mr. Dunbar. Ms. Martin. Counsel talks about the gruesome nature of these injuries. Yes, they were gruesome. This is a horrible case. What happened to this child was absolutely awful. The fact that these injuries are gruesome and what happened to this child was absolutely awful gets us nowhere in terms of establishing Mr. Dunbar's guilt. Absolutely nowhere. Ms. Martin was the last person who was with this child when he turned up injured. All the evidence that we have, all the cases that we have in the record, when Mr. Dunbar was with this child, this child was just fine. That's what the record shows in this case. In order to get from there to convict Mr. Dunbar of murder, we have to pile speculation on top of speculation, on top of speculation, on top of speculation. We don't do that in the United States to convict people of murder. That is not what we do in courts of law in the United States to convict people of murder. And we respectfully ask this Court to reverse Mr. Dunbar's conviction outright. If this Court declines to do that, we bar for this Honorable Court three reasons to award Mr. Dunbar a new trial. Thank you very much for your time, Your Honor. Thank you, Counsel, for your arguments. I will take this matter under advisement and recess now until the panel can go.